## JAMES CARSON *vs.* THE CITY OF HARTFORD.

An ordinance passed by the common council of the city of Hartford under its charter, provides for the following mode of laying out streets: "A resolution of the council proposing to lay out the street is to be referred to the board of street commissioners, with publication in two daily newspapers of the city, and a notice to all objectors to file objections with the board; an investigation by the board, and a report approving or disapproving, with reasons; action by the council on the report, favorable or adverse; if favorable, an assessment of damages and benefits by the commissioners; a right of appeal from the assessment to the Court of Common Pleas; when these are determined a final report by the commissioners as to the entire cost of the proposed street; and a right on the part of the council to then adopt the lay-out or reject it. If it is adopted the land becomes appropriated to public use when paid for. In May 1874, a resolution that the common council "will lay out and establish" a street in part over land of the plaintiff, was introduced in the council and published as required by law and after publication was passed; the street commissioners met for the purpose of making assessments in June and made their report in September, 1874; appeals were taken by sundry parties which were not disposed of until August, 1877, when the commissioners made their final report, recommending, in view of the expense and of changes in the value of property, the abandonment of the improvement; and the council thereupon passed a resolution rescinding its former vote and discontinuing all proceedings in the matter. The plaintiff, in whose favor damages had been assessed by the commissioners, brought an action against the city, claiming that it was liable both at common law and under a statute which provides that when any highway duly laid out shall be legally discontinued before being opened or worked the owner of land that had been taken for it may recover his actual damages from the laying out of the same; alleging that he had contracted for the erection of a building on the land and was compelled to break the contract, that he was prevented from building upon or getting any revenue from the land for more than three years, and that he might have sold the land for $10,000, while by its depreciation he could not now sell it for over $5,000. Held—

1. That it was not a case of the discontinuance of a street that had been laid out, as all the proceedings were provisional and subject to the action of the council upon the final report of the commissioners, and that therefore there was no liability under the statute.

2. That there was no liability at common law, the council having the right to ascertain all the facts, and to act upon full consideration after such enquiry, and no unnecessary or inexcusable delay being alleged.

3. That the city could not be liable on the ground that it had deceived the plaintiff by its proceedings by leading him to suppose that the street had been or would be legally laid out, as all the proceedings were in accordance with law and could not be construed as a declaration that they had a legal effect which the law did not give them, or as a promise which they did not in law involve.

Carson *v.* City of Hartford.

It seems however that the power given by the ordinance might be abused by an inexcusable delay in the proceedings of the city, and that in such a case the city might be compelled to indemnify a land-owner who had suffered loss thereby.

But the liability of the city could not depend solely upon the length of time between the reception and final rejection of the proposition to lay out the street.

ACTION ON THE CASE for an injury to the plaintiff's property by the institution and subsequent abandonment by the defendant city of proceedings for the laying out of a street; brought to the Superior Court in Hartford County.

The declaration contained four counts, under the first of which no claim was made. The second count was as follows:—.

That on the 24th day of May, 1874, the plaintiff was, and for a long time previous thereto had been, the owner of a certain piece of land lying in the city of Hartford, [describing it,] and that the court of common council of the city of Hartford, on or about the 24th day of May, 1874, laid out a new street or highway over the same, and appraised the damages to the plaintiff by laying out of the same above the benefits, at the sum of eight thousand two hundred dollars; and that the plaintiff at the time of the laying out of said street had made preparations for erecting a building upon said lot, and said court of common council on or about the 1st day of October, 1877, discontinued said street. And the plaintiff says that said lot of land, at the time of the aforesaid vote of said common council, was worth the sum of twelve thousand dollars, and that the plaintiff, by the action of the city, was for more than three years deprived of the use of said land, was prevented from selling the same, and at the time said court of common council voted to discontinue and abandon all proceedings in reference to the laying out of said street said property had greatly depreciated in value; all of which is to his damage the sum of fifteen thousand dollars.

The third count was as follows:—

Also in a plea of the case under a certain statute, namely, section fifty-two of part first of chapter seven of title six-

teen of the General Statutes, whereupon the plaintiff declares and says that on the 24th day of May, 1874, he was, and for a long time prior thereto had been, the owner of the piece of land described in the foregoing count, and that afterwards, and whilst the plaintiff was the owner of said land, namely, on the 24th day of May, 1874, the court of common council of the city of Hartford duly laid out a certain new highway to be called West Street, as a substitute for the highway then existing in said city known by that name ; that said new highway so laid out included in its limits nearly the whole of said piece of land, and so much thereof as to make the portion not so included wholly worthless; that afterwards, on or about the 1st day of June, 1874, said court of common council, by the board of street commissioners of said city, appraised the damages done the plaintiff, over and above the benefits received by him from the lay-out of said new highway, at the sum of eight thousand and two hundred dollars; and that afterwards, and whilst the plaintiff was the owner of said land, said court of common council on or about the 22d day of October, 1877, discontinued said new highway before it was opened and worked. And the plaintiff says that just before said new highway was laid out as aforesaid, he had contracted for a building to be immediately placed on said piece of land, and by reason of said lay-out was obliged to break said contract, whereby and by said action of the defendants he was damaged the sum of five hundred dollars ; that by reason of said lay-out he was for the period of three and a half years prevented from building on his said land, and prevented from receiving any revenue or rent therefrom, whereby he was damaged to the amount of three thousand dollars ; that at the time of said lay-out said land was of the value of ten thousand dollars, and the plaintiff might and would have sold the same had he not been prevented by said lay-out from so doing; that at the time of said discontinuance of said new highway the said land had depreciated in value fifty per cent., and the plaintiff, by reason of his having been prevented as aforesaid from selling said land, was damaged to the amount of five thousand dollars ; and the

plaintiff says that the defendants are liable to pay the damage so done by said lay-out and discontinuance of said new highway, under and according to the statute aforesaid, all which is to the plaintiff's damage the sum of ten thousand dollars.

The fourth count, after setting out the same general facts, proceeded as follows:—

That the defendants, well knowing the premises and intending to injure and prejudice the plaintiff, did, on the 24th day of May, 1874, in violation of their legal duties, by their court of common council, pass a vote proposing to lay out a new highway as a substitute for a highway then existing, known as West Street, and included in said proposed lay-out nearly the whole of said piece of land of the plaintiff, and did deceitfully advise the plaintiff that said vote was a valid lay-out of said new highway, and did by its lawful agents forbid the plaintiff from completing the building he had so as aforesaid commenced on his said land, and did unlawfully endeavor to and did intimidate the plaintiff and prevent him from completing said building; and did further deceitfully, and in violation of their said duties, advise and notify the plaintiff and all other citizens of said city that said vote was a lawful lay-out, by causing an assessment of benefits conferred and appraisal of damages inflicted by the lay-out of said new highway to be made by their board of street commissioners, as if there had been a lawful lay-out, and by appearing by their attorney upon the trial of appeals from said assessment of betterments and appraisal of damages; and did wrongfully and unnecessarily prolong the proceedings on said vote until the 24th day of October, 1877, when by their court of common council said vote was rescinded. By means whereof the plaintiff, during the whole of the time from the passage of said vote until the same was rescinded as aforesaid, was prevented from building on his said land, and was deprived of the rents he otherwise would have received therefrom, to the amount of three thousand dollars, and was put to great expense in procuring counsel and witnesses upon the trial of said appeal from said assessment of betterments and

appraisal of damages, to wit, to the expense of five hundred dollars, and was during all of said period prevented from selling said piece of land by reason of the cloud upon his title and right to sell growing out of said unlawful and wrongful acts of the defendants; and by way of showing special damage in this regard the plaintiff says that at the time of said vote said land was readily salable for the sum of ten thousand dollars, and was worth ten thousand dollars, but that afterwards, and before said vote was rescinded, said land depreciated in value six thousand dollars, and became unsalable; all which is to the plaintiff's damage the sum of ten thousand dollars.

The defendants demurred to the declaration, and the case was reserved upon the demurrer for the advice of this court.

It was stipulated by the parties that the following statement of the proceedings of the city should be taken as being embodied in the declaration, and as a correct statement of all that had been done by the city in the matter.

The following resolution was presented in the court of common council on the 11th day of May, 1874, and was ordered to be published as required by the city ordinance, and having been duly published on the 13th and 14th of May, was passed by the council on the 24th of May, 1874.

" *Resolved*, That the court of common council of the city of Hartford will lay out, open and establish a new street or highway as a substitute for the present West street, as follows:—the east line thereof to commence at a point in the north line of Buckingham street, ten feet west of the dividing line between the lands owned by James Carson and Samuel Hanmer, thence running northerly in a direct line to Elm street, passing through a point on the face of the wall of the southwest corner of the brick house owned by William E. Butler; the west line to be fifty feet west of the above described east line and parallel thereto at all points; the building lines on both sides of said street to be coincident with the street lines; and the board of street commissioners are hereby instructed to take the necessary measures

for the laying out and establishment of said street and building lines in conformity to law."

The first meeting of the board of street commissioners for making assessments of damages and benefits was held on the 1st of June, 1874. The assessment was completed, and a certificate of it filed with the city clerk on the 2d of September, and was duly published on the 3d and 4th of September, 1874. From this assessment appeals were taken to the Court of Common Pleas, as by law provided, and William C. Crump, Esq., was appointed by that court a committee to hear the same. Mr. Crump made his report, sustaining the assessment in general, though reducing the benefits some ten per cent., and increasing the damages to one or two parties. The street commissioners then submitted their final report in the matter, (which included Mr. Crump's reassessment,) with the following recommendation, August 13th, 1877:

"From the report and statements as above recited it appears that the assessments for benefits are insufficient in the sum of $10,759.35, to pay the damages awarded, and such deficiency must be assumed and paid for from the city treasury if the improvement proposed is to be effected. It is the opinion of the board that the special benefits accruing therefrom to the city at large are not sufficient to warrant such assumption and payment; moreover the market value of real estate has become so much less since the assessment was made that both damages and benefits now seem excessive. The board therefore with great regret are obliged to recommend that the resolutions passed by the court of common council May 24th, 1874, for the laying out and establishment of new street and building lines of West street, be rescinded, and that all proceedings taken or pending in relation thereto be discontinued and abandoned, and to this end it respectfully submits the following resolution."

The resolution submitted was as follows :

"*Resolved*, That the resolution passed by this court May 24th, 1874, for the laying out and establishment of the new street and building lines of West street be rescinded, and

that all proceedings taken or pending in relation thereto are hereby discontinued and abandoned."

This resolution was passed by the common council on the 27th of October, 1877. *

---

* The city ordinance, relating to the laying out of streets, passed by the common council under authority of the city charter, is as follows :

Sec. 1. Whenever any vote or resolution shall be offered in either board of the court of common council, proposing to lay out, construct, or establish any new highway, street, public park, dyke, or walk; * * under any of the provisions of the city charter, or amendments thereto, such vote shall not be passed by either board until said court has caused said proposed vote or resolution and a certificate that the same is pending in said court, attested by the city clerk, to be published twice, at least, in two daily newspapers published in the city of Hartford, with a notice appended to such published vote or resolution to all persons to file a written statement of their objections, if any they have, with the board of street commissioners within ten days inclusive from the day of the first publication of said notice. * *

Sec 2. Every such proposed vote or resolution shall briefly and intelligibly state the general character and description of the proposed improvements, but need not contain definite measurements, courses, or termini. * *

Sec. 3. The court of common council shall, before further proceeding to pass or carry out said vote or resolution, refer the same to the board of street commissioners for their investigation, and said board shall forthwith inquire into the same, and make report thereon to the court of common council, either recommending or disapproving the passage of said vote or resolution, with their reasons therefor.

Sec. 4. At any time after the expiration of said ten days, and after the report of the commissioners thereon shall have been made and accepted, said court of common council may proceed to carry said vote or resolution into effect in manner as hereinafter provided, or otherwise act upon the same. And whenever said court shall order any of said proposed improvements, the entire expense of carrying out said improvement shall be assessed as betterments upon the persons or land specially benefited thereby, as hereinafter provided.

Sec. 5. [Provides for notice to be given by the street commissioners of their meeting to assess damages and benefits.]

Sec. 6. Whenever any vote or resolution described in the first section of this ordinance has been legally published, and it shall be necessary to take any land or any interest therein belonging to private owners or corporations for said contemplated improvement, the court of common council, before otherwise carrying said vote or resolution into effect, unless they obtain such land or interest by voluntary dedication from the owners thereof, shall refer the subject matter of the contemplated improvement to the board of street commissioners, and said board shall thereupon proceed in behalf of said court of common council, as follows    Said board shall obtain from the city surveyor a map, drawing, or written description, clearly explaining the contemplated improvement, and showing the adjoining land and owners thereof, and shall then agree, if possible, with the owners of the land required for said improvement, upon the compensa-

*C. E. Perkins,* in support of the demurrer.

1. The plaintiff cannot recover under the provisions of the statute (Gen. Statutes p. 240, sec. 52), which provides that "when any highway, *duly laid out,* shall be *legally discontinued* before being opened or worked, the owner of land

tion to be made therefor, including the damages for establishing a building line or lines in case of opening a new street, and with those who will be specially benefited by said improvement, as to the payment of the entire amount to be assessed as betterments for said improvement, and the respective amounts or proportions thereof which each person so benefited will pay, and secure from each such owner or person proper written evidence of such agreement.

SEC. 7. If said board of street commissioners fail to agree with any owner of said land or interest therein, or with any of the parties who in their opinion should be assessed for any benefits on account of said proposed improvement, they shall, after the requisite notice given as hereinbefore provided, proceed to assess all betterments or benefits and to appraise all damages therefor to the persons liable to such betterments or entitled to such damages, including the damages for building lines in case of new streets or alteration of existing streets (except expense for construction, which shall be assessed as hereinafter provided), upon the proper parties or land specially benefited by said proposed improvement, in proportion to the benefit or damages to each respectively, and shall furnish a proper certificate thereof, signed by a majority of said board, to the city clerk, who shall forthwith cause the same to be published at least twice in two or more of the daily newspapers published in the city of Hartford, at least four days before the same shall be acted on by said court, and the original certificate shall be lodged on file in the city clerk's office, and the same shall be binding and conclusive upon all parties if said court order said improvement, unless appealed from and changed upon said appeal as by law provided; and when any appeal shall be taken, said board shall instruct and aid the city attorney in the matter of said appeal, until the same shall be determined.

SEC. 8. Whenever all persons who are entitled to compensation for damages, or liable for betterments on account of any of said improvements, shall agree upon the respective amounts to be received or paid by them therefor; * * said board shall immediately thereafter make their report to said court of common council, and, in cases where an appeal or appeals are taken as aforesaid, as soon as practicable after such proceedings are determined.

SEC. 9. Their report shall set forth the amount of damages agreed upon with each of said owners of land, and the amount of benefits agreed to be paid by the respective parties benefited by said improvement in cases of agreement with all parties; or, in case of assessment by said board, of the amount of damages appraised or betterments assessed upon each of the parties entitled to such damages or liable for such betterments, or upon an appeal the amount fixed by the court or judge hearing the same, so that all damages thus ascertained may become a part of the expense to be assessed, and all betterments may be thus assessed upon the persons or property specially benefited thereby. And said committee shall also embrace in their report a written descriptive survey

over which it is laid out may recover of the town or city his actual damages from laying it out." In *Kirtland* v. *City of Meriden*, 39 Conn., 107, the court says on page 114: "If we had no statute on the subject, the petitioners would be entitled to their damages, the discontinuance notwithstanding, for the discontinuance proceeds upon the idea that *a perfect legal highway had come into existence* by the operation of the proceedings laying it out." Now the real question in this case is whether the extension of West street was ever actually "laid out" and "discontinued." The city claims that no *lay-out* ever was made ; all that was done was to take such necessary preliminary proceedings as would enable the common council to pass finally on the question whether, under all the circumstances of the case, the expense, the amount of assessments for damages, and the amount of those for betterments, it was on the whole best to lay out this extension or not. It clearly appears, from the city ordinance, that the method of laying out streets is as follows :—A vote is prepared *proposing* to lay out the street, this vote is published in the papers and referred to the street commissioners to examine and report their opinion to the

of the proposed improvement concerning which said proceedings have been had, and such a vote, resolution or ordinance as in their judgment ought to be passed in order to establish and carry out said improvement, fully describing therein the width, curve, boundaries, grade, and building lines, and such other particulars of said improvement as the case may require, and including an order for the payment, or deposit, at some place named therein, of the amount of damages appraised to the respective owners of any land or interest therein required for said improvement, and an order to the mayor to issue his warrant forthwith to collect all said assessments for said betterments assessed as aforesaid. Said court may alter said proposed vote, if it see cause, provided no change be made in the lines or location of the improvement which will require taking more or a greater interest in any land for said improvement than shown by said survey and report, and shall thereupon adopt such vote or resolution, with or without such alteration, or reject the same. .

SEC. 10. Whenever any vote establishing any public improvement has been passed as aforesaid, and the proper compensation has been paid to or deposited for the owners of any land taken for such improvement, then said land shall be immediately open and subject to the public use on such conditions as said court may impose, and shall be, to all intents, appropriated therefor, unless the public work or improvement require the previous sanction of a city meeting, under the sixth section of the city charter, in which case such appropriation shall not take effect until such sanction has been obtained.

common council. After this report has been made the ordinance provides that the council "may proceed to carry said vote or resolution into effect in manner as hereinafter provided, or otherwise act upon the same." If it becomes necessary to take any land for these *contemplated* improvements, the matter shall be referred again to the street commissioners, who shall agree with the land owners upon, or shall assess, the damages and benefits, and these assessments shall be binding "*if said court order said improvement,*" unless appealed from. If any parties are dissatisfied with these assessments they may appeal, and on such appeal any or all of the assessments may be altered or changed, or there may be an entire re-assessment. When all these matters have been finally settled, and it is ascertained how much it will cost to carry out the contemplated improvement, and whether such expense can be all assessed upon individuals, so that the city shall not have to pay any part of it, then the street commissioners are to make another report to the common council, stating all the facts, so that the council may have full information concerning it, and also what vote they advise to be passed relating to it in view of all the circumstances. The common council may thereupon pass such vote if they see fit, "*or reject the same.*" The tenth section then provides that if a "vote establishing any public improvement *has been passed as aforesaid,*" and the compensation paid to owners of land taken, then such land "*shall be appropriated to the public use.*" Now from all this it clearly appears that it is the final vote passed in accordance with the last paragraph of the ninth section of the ordinance, and this only, which *lays out* the highway. It may be that in consequence of the action of the common council in taking these preliminary steps, and the delay caused by the appeals which were taken, the plaintiff has suffered some injury, but this is *damnum absque injuriâ*, and is clearly not such damage as the statute authorizes a recovery for. This view of the meaning of the expression "lay-out" is fully confirmed by the case of *Wolcott* v. *Pond*, 19 Conn., 601.

2. It is claimed that, apart from the statute, the city is

liable for the injury sustained by the plaintiff from not being able to use his land as he desired during the time these proceedings were pending, but there is no principle of law which will authorize such a recovery. The city was acting in the line of its duty. There was nothing illegal or improper in any of its actions. The charter, and ordinance passed in pursuance of it, were followed in all respects. It was made the duty of the city to inquire into the expediency and propriety of making the new highway, and if, in consequence of appeals which were taken, or for any other reason, that inquiry occupied more time than usual, the city is not responsible. These steps must necessarily take much time, and to hold that, whenever the city, after examining in a legal manner into the propriety of a proposed new highway, refuses to lay it out, it is liable for damages, would be an extraordinary doctrine. *Webster* v. *City of Chicago*, 83 Ill., 458.

3. The last count places the plaintiff's claim on an entirely different ground, or rather on several grounds.—1st. It alleges that the defendant "in violation of its legal duties" passed a vote *proposing* to lay out a new highway.—2d. That it "deceitfully" advised the plaintiff that this vote was a valid lay-out.—3d. That it did, by its lawful agents, forbid the plaintiff from completing a building on the land.—4th. That it did unlawfully "intimidate" the plaintiff, and prevent him from completing the building.—5th. That it did "deceitfully and in violation of its duties" advise and notify the plaintiff that the vote was a lawful lay-out, by causing the board of street commissioners to make an assessment of damages and benefits, and by appearing by attorney on the trial of appeals from them.—6th. That it wrongfully and unnecessarily prolonged the proceedings on the vote. We have already shown by the ordinance that the city had a right to pass just such votes as it did pass, and there is nothing in the case to show that the vote was an illegal one. The two allegations as to "advising" the plaintiff are to be taken together, and they both amount to this—that the city caused the street commissioners to assess damages, and had the city attorney attend the hearing of the appeals. But, as has

already been shown, this course was the one pointed out by the ordinance ; it was the proper and legal course for the city to take. The allegation that this was done " deceitfully" does not aid the averment. Whether a city does a legal duty " deceitfully" or not makes no difference. It can hardly be intended to charge false representations. If it is, the count is seriously defective. Such a count needs an averment of a knowledge that the statement made was false. It must be an untrue statement of some fact, and not of the legality or illegality of proceedings; it must be averred that the defendant made the statement with intent to deceive, and that the plaintiff was deceived. It is alleged that the city " intimidated" the plaintiff, but it is not stated what was done to cause such fright on his part. How could a city "intimidate" any one unless by its votes. No agent of a municipal corporation could make it liable because he " intimidated" any one. Such an act would be outside of his legal duties, and it is well settled that agents of municipal corporations can only make their principals liable for acts clearly within the scope of their authority. Dillon on Munic. Corp., § 767. It is alleged that the city, "by its lawful agents, forbade the plaintiff from completing a building." But an action does not lie against a city because it, or its agents, forbade a person from doing anything, any more than against an individual. If he was foolish enough to stop merely because some agent of the city told him to, he cannot make the tax-payers pay him damages therefor. The last ground alleged is, that the city " wrongfully and unnecessarily prolonged the proceedings on the vote." But it is not alleged how the city prolonged the proceedings, and certainly in a count for such a cause of action enough should be stated to enable the court to see some ground for the allegation. But, apart from this, a city cannot be liable for damages merely because the proceedings are not carried on as fast as parties may desire, and it is believed that no authority can be found holding that a city is liable only for delay in the preliminary proceedings for determining whether the proposed improvement shall be carried out or not. The farthest that any case

has gone is to suggest that if a city delayed an unreasonable time in deciding after a final report was made, whether it would make the improvement or not, it might be liable. But in this case the final report was made August 13th, 1877, and the final vote was passed October 27th, 1877, which was surely not an unreasonable time.

*W. Hamersley* and *F. H. Parker*, with whom was *E. Goodman*, contra.

1. The second count sufficiently states a cause of action against the defendant. It alleges in substance that the plaintiff was the owner, on May 24th, 1874, of the land therein described; that on that day the common council of the city laid out a new street over the land in question; that the plaintiff's damages were assessed; that the plaintiff had made preparations to erect a building upon his lot; that the common council in October, 1877, discontinued the street; and that the plaintiff, by the action of the city in the matter, was deprived of the use of his lot for more than three years, and was prevented from selling it, and that it in the meantime had greatly depreciated in value. As far as this count is concerned it is immaterial whether the action of the city amounted to a lay-out or not. It is alleged that the action of the city caused the damage to the plaintiff. Is the city liable for this damage? 1st. The city in depriving the plaintiff of the use of his land and preventing him from selling the same for more than three years, took his land for public purposes during that time. It invaded his right of property, "which consists in the free use, enjoyment and disposal of all his acquisitions, without any control or diminution save only by the laws of the land." 1 Black. Com., 138; 2 Kent Com., 320, 326; *Wynehamer* v. *The People*, 13 N. York, 378, 433. Supposing that there was a lay-out of the highway, the city could compel the plaintiff to part with his property at a fixed price, to wit, the assessed damages. It had acquired to this extent a right in the lot. But could this right of the city in and over this property subsist without diminution of the plaintiff's rights therein? Clearly

not. The interest of the city must have been deducted from the entire property previously belonging to the plaintiff, and his property must have been taken or diminished to the extent of the interest acquired by the city. If there was not a valid lay-out in fact, still the apparent interest of the city and its apparent control over the property was the same, and there was the same cloud upon the plaintiff's title. His property rights were just as effectually invaded. *Eaton* v. *Boston, Concord & Montreal R. R. Co.*, 51 N. Hamp., 504. —2d. The authorities hold that any interference of the pub-. lic with private property which deprives the owner of his exclusive right to use and dispose of the same is a taking of private property for public uses within the meaning of the constitution of the United States, and of this State, requiring a just compensation therefor. *People* v. *Kerr*, 37 Barb., 357, 399 ; *Glover* v. *Powell*, 2 Stockt., 211 ; *Barron* v. *Mayor, &c., of Baltimore*, 2 Am. Jurist, 203, 207, 212 ; *Pumpelly* v. *Green Bay Co.*, 13 Wall., 166, 179 ; *Hooker* v. *N. Haven & Northampton Co.*, 14 Conn., 146, 151 ; *Gardiner* v. *Trustees of Newburgh*, 2 John. Ch., 162 ; *Eaton* v. *Boston, C. & M. R. R. Co.*, 51 N. Hamp., 516.—3d. It has been expressly decided that where a city has laid out a street or taken such steps in the premises as have temporarily deprived a property owner of the use and disposal of his property, and then discontinued proceedings or delayed them unreasonably, it is liable for damages. *McLaughlin* v. *Second Municipality*, 5 Louis. An., 504 ; *Hullen* v. *Second Municipality*, 11 Robinson, 97 ; *Moale* v. *Mayor, &c., of Baltimore*, 5 Maryl., 314, 321 ; *Graff* v. *Mayor, &c., of Baltimore*, 10 id., 544, 554.

2. The third count declares upon the statute, which provides that where a street is discontinued before being opened and worked, the city shall not be liable for the assessed damages, but only for the actual damages the property owner has suffered by reason of the lay-out of the street. Gen. Stat., p. 240, sec. 52 ; see also edition of 1866, p. 501, sec. 38. It will be conceded that this count is good if the acts of the city were a valid lay-out. The plaintiff insists that such is their legal effect.—1st. The resolution defines the

limits of the new street and building lines thereon, and instructs the street commissioners to take the necessary measures to carry it into effect in conformity to law. This resolution was duly published and passed. The city charter authorizes the common council to lay out streets; its authority for that purpose is exclusive; its action is final, and is subject to the ratification of no other body; and no other or further act on the part of the council was required by the charter in order to complete the lay-out. 6 Special Acts, 314, 743.—2d. In pursuance of the resolution the street commissioners assessed the damages and benefits, and filed their certificate of assessment, which was duly published, and, thereafter, appeals taken from their assessments were determined as by law provided. Now this assessment under the city charter cannot be made until a street has been duly laid out. The lay-out must precede the assessment. 6 Special Acts, 315. And where a city in the exercise of the power of eminent domain, takes private property for public uses, every provision of its charter regulating such proceedings must be strictly complied with. *Nichols* v. *Bridgeport*, 23 Conn., 189, 208. Nor can the city escape liability by relying on any of its own ordinances. The provisions of its charter cannot be modified or varied thereby. *Thompson* v. *Lessee of Carroll*, 22 How., 422, 435; *State* v. *Welch*, 36 Conn., 215, 217.—3d. The street commissioners in their final report, and the common council in its resolution of discontinuance, recognize the fact that the street had been laid out, and, indeed, distinctly affirm it. Why rescind the resolution of lay-out, if it did not operate as a lay-out? Why use the technical word "discontinue," if there was no street to discontinue?—4th. The city, by its common council and its authorized agents, treated the resolution of May 24th, 1874, as a valid lay-out of a street for more than three years; and so held it out to the public and to the plaintiff. It caused the plaintiff by its acts and representations so to believe, and induced him to act upon that belief, so as to injuriously affect his previous position. He has been greatly damaged thereby, and the city is estopped from denying that such reso-

lution was a valid lay-out. *Roe* v. *Jerome*, 18 Conn., 138; *East Haddam Bank* v. *Shailer*, 20 id., 18; *Preston* v. *Mann*, 25 id., 118.

3. The fourth count alleges in substance that the defendant, intending to injure the plaintiff, passed the vote of May 24th, 1874; deceitfully advised the plaintiff that the vote was a valid lay-out; forbade the plaintiff to complete his building; intimidated him from so doing; proceeded in all respects as if the vote was a valid lay-out; and wrongfully prolonged the proceedings until October, 1877, when the vote was rescinded; and that by reason of these wrongful acts the plaintiff was deprived of the use of his property and suffered other damage as therein fully stated. In other words, the city abused the high governmental powers conferred upon it by its charter to the injury of the plaintiff. Is the tort declared upon of such a character that the wrongdoers must respond in damages? If not, the law permits a municipal corporation to inflict great damage upon a citizen and leaves him without redress. We assert that the law works no such injustice.—1st. It is well settled that an action of tort can be maintained against a municipal corporation in a variety of cases. Thus it is responsible for misfeasance in the performance of the public duties resting upon it. *Mootry* v. *Town of Danbury*, 45 Conn., 550, 558; *Rowe* v. *Portsmouth*, 56 N. Hamp., 291; *Inman* v. *Tripp*, 11 R. Isl., 520; *Ashley* v. *Port Huron*, 35 Mich., 296, 301; *Allentown* v. *Kramer*, 73 Penn. St., 400, 409; *Lee* v. *Village of Sandy Hill*, 40 N. York, 442, 452.—2d. It is also held that cities cannot interfere with private property except as the right is given by statute; and for wanton and unnecessary damages in such cases they are responsible in tort. *Mitchell* v. *City of Rockland*, 45 Maine, 496, 504; *Plum* v. *Morris Canal & Banking Co.*, 2 Stockt., 256, 260; *Barron* v. *Mayor &c. of Baltimore*, 2 Am. Jurist, 203, 206.—3d. A city is liable in tort for the damage resulting to a private person from illegal and void acts which are within the scope of its general powers. *Howell* v. *City of Buffalo*, 15 N. York, 512; *Walling* v. *Mayor &c. of Shreveport*, 5 Louis. An., 660; *Soulard* v. *City*

*of St. Louis*, 36 Misso., 546, 552.—4th. It is elementary law that where one wrongfully, by misconduct, or through fraud or deceit, injures another, an action on the case will lie. 1 Hillard on Torts, 84. Misconduct which deprives one of the use and income of his property will subject the wrong-doer to an action on the case. *Stetson* v. *Faxon*, 19 Pick., 147; *Barron* v. *Mayor &c. of Baltimore*, supra. And generally a city is liable in an action on the case where acts are done by its authority, which would warrant a like action against an individual. *Thayer* v. *City of Boston*, 19 Pick., 511, 516; *Soulard* v. *City of St. Louis*, supra. In this case the wrong complained of is an oppressive, unlawful and tyrannical exercise of the delegated power of eminent domain, the power to appropriate compulsorily private property for public uses; a power in derogation of that right of property which the law so jealously guards. Can it be that the law provides redress for torts committed by municipal corporations in the performance of their more common duties, and grants them immunity for all wrongs perpetrated in the exercise of this, the highest power of these local sovereignties?

GRANGER, J. In the exercise of powers conferred by charter the common council of the city of Hartford passed an ordinance specifying the manner of laying out streets. It is a sufficiently detailed statement of this to say, that it requires the reference of a resolution proposing to lay out a street to the street commissioners before any vote is taken thereon; a publication in newspapers with notice to all objectors to file written reasons with them; and an investigation by and a report from them, approving or disapproving, with reasons in writing. Upon the reception of this report the council may reject the resolution or proceed in the following manner:—The commissioners shall assess damages to the owners of land taken; benefits upon owners of land benefited to the extent of the cost of the street; from these assessments appeals may be taken to the Court of Common Pleas; when these are determined the commissioners are to report to the council the entire cost of the proposed street;

the latter may then pass or reject the resolution; if passed the land is appropriated to public use when it is paid for.

In May, 1874, a resolution was presented in the council proposing so lay a street over land of the plaintiff, and was referred to the commissioners. In June, 1874, they allowed damages to him and assessed benefits upon others; appeals were taken to the court, and were decided in 1877; in August of that year the commissioners made their final report as follows:—"From the report and statements above recited it appears that the assessments for benefits are insufficient in the sum of $10,759.35, to pay damages as awarded, and such deficiency must be assumed and paid for from the city treasury if the improvement proposed is to be effected. It is the opinion of the board that the special benefits accruing therefrom to the city at large are not sufficient to warrant such assumption and payment. Moreover, the market value of real estate has become so much less since the assessment was made that both damages and benefits now seem excessive. The board therefore with great regret are obliged to recommend that the resolutions, as passed by the court of common council May 24th, 1874, for the laying out and establishment of new streets and building lines of West street be rescinded; and that all proceedings taken or pending in relation thereto be discontinued and abandoned. And to this end it respectfully submits the following resolution:—*Resolved*, that the resolutions, as passed by this court May 24th, 1874, for the laying out and establishment of the new street and building lines of West street be rescinded, and that all proceedings taken or pending in relation thereto are hereby discontinued and abandoned."

The resolution thus recommended by the board was passed by the common council on the 29th of October, 1877.

In September, 1878, the plaintiff instituted this action for damages. The declaration is in four counts; the defendants interposed a demurrer. The case is reserved for the advice of this court.

Nothing is claimed under the first count. Passing the second, the allegations in the third are, that in May, 1874,

the council laid out a highway over land belonging to the plaintiff; that in June, 1874, it appraised damages to him therefor to the amount of $8,200; that in October, 1877, it discontinued the highway before it had been opened or worked; that previous to the first date he had contracted for the erection of a building on the land, which contract the lay-out of the way compelled him to break, to his damage the sum of $500; that he was prevented from building upon, or deriving any revenue from the land, for the period of more than three years, to his damage the sum of $3,000; that he might and would have sold the same for $10,000 but for the lay-out; that at the last-named date he could sell the same for no more than $5,000, to his damage the sum of $5,000; that the defendants are liable to pay the damages consequent upon the lay-out and the discontinuance, by virtue of the statute which provides that "when any highway duly laid out has been or shall be legally discontinued before being opened and worked, no action shall be brought to recover damages assessed therefor, but the owner of lands over which it is laid out may recover of the town, city or borough his actual damages from laying it out." Revision of 1875, p. 240, sec. 52.

By charter the council is vested with exclusive power to lay out streets and to pass ordinances limiting itself as to the manner in which that power shall be exercised. The ordinance in existence in 1874 was therefore the then charter method—the law of this lay-out. The scope and effect of each act of the council in reference to it is to be determined in the light of the whole ordinance; upon considerations of order as to time, and of the relations which one act bears to every other concerning the same matter. No one vote includes or expresses the action of the council.

The ordinance is so framed that the first two acts must remain tentative and provisional until a third shall make them component parts of one decisive and effective vote; so framed that no step taken anterior to the determination of all questions as to assessments, shall lay out a street; the council reserved to itself an opportunity for the exercise of

judgment upon knowledge.  The opening of a city street hinges upon the proper adjustment of benefits to land improved to damages for land taken.  By entertaining the proposition provisionally assessments could be made and appeals have a standing in court; by judicial action these would be unalterably determined; there would be knowledge as to the cost of the proposed way and as to the persons who would be compelled to pay it; and with this knowledge would come the first opportunity for the exercise of judgment; and in the ninth section of the ordinance, speaking of the time when there would be action upon full knowledge, the council expressly reserves to itself the right then to reject the proposition.  This right it exercised on October 27th, 1877; therefore no way was laid out, and the statute affords no relief to the plaintiff.

In the second count the allegations are—that in May, 1874, the council laid out a street over the plaintiff's land, and appraised damages to him therefor to the amount of $8,200; that he had made preparations for the erection of a building upon his lot; that the council discontinued the street in October, 1877; that at the first-named date the land was worth $12,000; that by the action of the council he was deprived of the use of, and was prevented from selling it, for the period of three years; and that during that time it greatly depreciated in value—to his damage the sum of $15,000.

Although the allegation is that more than three years intervened between the first and final acts of the council, no blame for the delay is imputed.  As we have said that no way was laid out, the count must stand upon the proposition that if the council considers, for any period however brief, the matter of laying out a way, and a provisional award of damages is made to an owner of land if it shall be taken, and he is delayed thereby in the sale, or omits to make profit by the use of it, the city is responsible in damages.

But, the council considered only—did not take.  By considering no new relation between the city and the land came into being; for at all times the land of the plaintiff and of

every other owner is exposed to the right of the public to take it for public use. By considering, the taking became more probable than before; but it remained only a possibility; his exclusive possession was not interrupted; the power to sell was not taken from him; his use was made less profitable only by his apprehension lest a possibility might ripen into a certainty. Presumably the award of damages included the loss resulting from his breach of contract, as well as the value of the land; doubtless the award would prevent a sale for more than the valuation; but the prevention of a sale for more than a fair price constitutes no invasion of the rights of property for which the law furnishes any redress. Moreover, as with notice to the plaintiff of each act of the council there went notice that it was considering merely, and had not determined, if he has suffered loss by non-use it must be charged to his mistake in forecasting its action.

This count is supported by the citation of authorities, some of which we mention. *Eaton* v. *Boston, Concord & Montreal R. R. Co.*, 51 N. Hamp., 504—here the defendant removed a natural barrier, and as the result water carried sand and stones upon the plaintiff's land; *Glover* v. *Powell*, 2 Stockton, 211—here the defendant removed a dam; *Barron* v. *Mayor &c. of Baltimore*, 2 Am. Jurist, 203—the defendant turned a stream of water, and as the result sand and stones were deposited in front of the plaintiff's wharf, and vessels were obstructed in gaining access thereto; *Pumpelly* v. *Green Bay Co.*, 13 Wall., 166—the defendant flowed the plaintiff's land without compensation; *Hooker* v. *New Haven & Northampton Co.*, 14 Conn., 146—a like injury; *Gardiner* v. *Trustees of Newburgh*, 2 John. Ch., 162—an entry upon land without compensation for the purpose of building reservoirs. But, practically, each of these acts was a taking of land, was the actual expulsion and exclusion of the owner from it by force. *Green* v. *Button*, 2 Cromp., Mees. & Ros., 707—here the defendant by a false assertion to the vendor of a quantity of lumber, of a right to detain it from the possession of the vendee, the plaintiff, prevented the delivery thereof to him; *Wynehamer* v. *The People*, 13 N. York, 378

—declaring the law which forbids both the keeping anywhere, for any purpose, and the sale of intoxicating liquors, owned at the time when the same went into operation, to be an invasion of the rights of property. This last was in effect the destruction of property. These cases do not determine the law of an instance of a contemplated but unaccomplished taking for public use.

In the fourth count the allegations are that the defendants are an incorporated city, vested with powers granted and subject to duties imposed by their charter and the laws of the state; that in May, 1874, the plaintiff was the owner therein of a piece of land valuable only for building, and which could yield no revenue except from rents of buildings thereon; that previous to that date he had entered into a contract for the completing of an unfinished building thereon; that on that date the defendants, intending to injure and prejudice him, did, in violation of their legal duties, pass a vote proposing to lay out a highway which should include most of his land; did deceitfully advise him that the vote was a valid lay-out; did by their lawful agents forbid him from completing the building which he had commenced; did unlawfully endeavor to and did intimidate him and prevent him from completing it; did further deceitfully and in violation of their duties advise and notify him and all other citizens that the vote was a lawful lay-out, by making an assessment of benefits conferred and an appraisal of damages inflicted thereby, as if there had been a lawful lay-out; did appear by attorney upon the trial of appeals from said asessments; did wrongfully and unnecessarily prolong the proceedings upon said vote until October 24th, 1877, and did upon the last-named day rescind the vote; that during the period between these dates he was prevented from building upon the land; was deprived of rents therefrom which he otherwise would have received, was put to great expense for witnesses and counsel upon the trial of said appeals, was prevented during said period from selling the land by reason of the cloud upon his title and right to sell resulting from the unlawful acts of the defendants, and that at the first date

the land could have been sold for $10,000, and at the last could not be sold for more than $4,000; all of which he avers is to his damage the sum of $10,000.

But the vote by the council, the assessment by the commissioners, and the appearance in court by the attorney, were acts within legal permission. No one of them, nor all combined, constituted a declaration to the plaintiff that a street had been laid out, nor a promise that it would be. They contained no false statement as to the past; none at all as to the future. The "deception" was self-imposed by his erroneous inference of the future from the past. The "intimidation" had this extent, that he was made fearful lest he should not so read the future as to make the greatest profit from his land; but this is not the fear for which the law gives damages. And the allegation that the city "did wrongfully and unnecessarily prolong the proceedings," is too vague and general to support a judgment. It points neither to an act, nor to an omission to act, for the purpose of delay, and is without suggestion as to whether the obstruction was for a day or a year. Moreover, it calls upon us to say that, of legal necessity, the intervention of three and one-half years between the first and last votes would of itself and under all circumstances subject the city to damages. This we cannot do. But, while preserving to the council the privilege of considering after knowledge, we do not say that it cannot abuse this privilege; nor that as a consequence of such abuse the city may not be compelled to indemnify land-owners who have suffered loss by inexcusable delay.

This count is supported by the citation of authorities, among which are the following: *Mootry* v. *Town of Danbury*, 45 Conn., 550—a case of injury resulting from the negligent construction of a bridge; *Rowe* v. *Portsmouth*, 56 N. Hamp., 291—one of injury from negligence in allowing a sewer to be obstructed; *Inman* v. *Tripp*, 11 R. Isl., 520—injury from water turned upon the plaintiff's land by change of grade of the street; *Ashley* v. *City of Port Huron*, 35 Mich., 296— injury from a defective sewer; *Allentown* v. *Kramer*, 73 Penn. St., 406—injury from water from an obstructed gutter;

*Lee* v. *Village of Sandy Hill*, 40 N. York, 442—trespass upon land and removal of fence; *Mitchell* v. *City of Rockland*, 45 Maine, 496—where the officers of a town took possession of a portion of a vessel belonging to the plaintiff and converted it into a hospital; *Plum* v. *Morris Canal & Banking Co.*, 2 Stockt., 256—where the defendants proposed to raise the highway in front of plaintiff's premises; *Howell* v. *City of Buffalo*, 15 N. York, 512—where the city enforced payment of a void assessment; *Walling* v. *Mayor &c. of Shreveport*, 5 Louis. Ann., 660—entry upon land and cutting down trees without right; *Soulard* v. *City of St. Louis*, 36 Misso., 546—entry upon land without compensation; *Stetson* v. *Faxon*, 19 Pick., 147—obscuring the plaintiff's building by projecting the adjoining one into the street; *Thayer* v. *City of Boston*, 19 Pick., 511—obstructing access to plaintiff's premises by building a stall in front of them.

These again are trespasses, and, as we have said, furnish no precedent for making good to a land-owner profits which he omitted to make because of his belief that the city would take his land.

In *McLaughlin* v. *Second Municipality*, 5 Louis. Ann., 504, the court in affirming a judgment for the plaintiff says:— " We cannot conceive any reasonable excuse for the municipality to commence such a proceeding twice, and finally abandon it, after keeping the suffering proprietor in suspense for more than eighteen months, and have no hesitation in pronouncing that it is legal and equitable that they should pay the actual damages suffered." In *Graff* v. *Mayor &c. of Baltimore*, 10 Maryland, 544, the city abandoned a project after assessments were confirmed by a court against its objections; the court said that the city might be liable in some form of action for loss sustained by a land-owner by reason of its action; in *Hullen* v. *Second Municipality*, 11 Robinson, 97, the city abandoned proceedings after an assessment to a land-owner, but took possession of his land; the court said he could not recover the assessment price as upon an implied sale, but only damages for taking possession. In *Norris* v. *Mayor &c. of Baltimore*, 44 Maryland, 598, the court says

---

that "when the assessments have all been finally settled the city can then fairly exercise its election to abandon the enterprise or pay the assessments and proceed with the work. For losses to owners occasioned by delay *subsequently occurring* through failure of the city authorities thus *to abandon or pay*, it is, we think, just and right the city should be held liable, and this we understand to be the effect of the decision in *Graff's case*."

But, if it is the purport of any one of these decisions that the liability of the city depends solely upon the space of time between the reception and rejection of a proposition, we cannot accept it as the law of this case..

We advise judgment for the defendant.

In this opinion the other judges concurred.