DARIUS STEVENS AND ANOTHER *vs.* THE BOROUGH OF
                    DANBURY.

53    9
75  249
75  251

A borough, authorized to establish water works and to take by purchase
  or appraisal any property necessary for the purpose, voted to procure
  its supply of water from a certain stream at a certain point where the
  dam would set the water back upon and destroy a mill privilege of the
  plaintiffs.  The borough purchased the land necessary for the dam,
  but not being able to agree with the plaintiffs as to the amount to be
  paid them for their mill privilege, had the same legally appraised, the
  appraisers fixing the sum at $3,000.  Nothing further was done by the
  borough toward the erection of the dam, and one year after the above
  vote was passed the borough rescinded it and abandoned the project
  and gave notice of the fact to the plaintiffs.  Held that the plaintiffs
  could not recover the $3,000.
And held that the plaintiffs could not recover the counsel fees and other
  expenses incurred in the hearing before the appraisers.

[Argued March 18th—decided May 4th, 1885.]

ACTION to recover of the defendant borough damages
assessed in the plaintiffs' favor for land claimed to have
been taken by the borough for the construction of public
water works; brought to the Superior Court.  The follow-
ing facts were found by the court.

The plaintiffs, on the 1st of January, 1881, were the joint
owners with others of certain lands, rights and privileges
described as follows:—All the land covered by the waters
of Boggs Pond, and the dam at the outlet thereof, and the
land on which the dam stands, and the right to control the
dam, together with the right of access thereto, and in addi-
tion to the waters covered by the pond, so much of the
water and land as the pond will cover when raised by a
dam to a height to which the plaintiffs have a right to raise
it; also the right to use all the water flowing from the
pond and the stream flowing therefrom in a southerly direc-
tion through the Westville and Middle River District in
said Danbury, whether said water flows from said pond or
into said stream from other streams at or above the land

purchased by the borough of Danbury from Samuel Gregory and wife.

At a legal meeting of the voters of the borough of Danbury held on the 16th of July, 1880, the following vote was passed:—

" *Voted,* That the warden and burgesses and water commissioners be and are hereby authorized to procure an additional supply of water for the use of the borough from the stream running near the residence of Samuel Gregory, in accordance with the provisions of the charter of the borough and the several amendments thereto."

On the 25th of September, 1880, the borough, in pursuance of this vote, and of the act, purchased of Samuel Gregory and wife certain lands through which the stream of water proposed to be taken by the borough flows, and below the land of the plaintiffs above described, and then entered upon and took possession of the same with the intention at some future time of erecting a dam thereon for the purpose of diverting the water rights and privileges of the plaintiffs; but the borough has never erected any such dam, nor in any way used the stream for the use and benefit of the borough.

In pursuance of the vote and of an act to supply the borough of Danbury with water for public and private purposes, passed by the General Assembly in 1860 and re-enacted in 1862, the borough by its water commissioners, on the 24th of January, 1881, made its application to Judge Carpenter of the Superior Court, for the appointment of three disinterested persons to assess under oath the amount of compensation to be paid to the plaintiffs for the taking of their property. In this application it was averred that the commissioners "had entered upon and taken" the property in question, and that by the taking of the same "damage has occurred or may be likely to occur to said respondents." On February 7th, 1881, the judge appointed Luzon B. Morris, John H. Leeds and Frederick J. Kingsbury appraisers, and they gave due notice in writing to the plaintiffs and to the borough to appear before them at the

Stevens v. Borough of Danbury.

water commissioners' office in Danbury, on the 9th of May, 1881, to be heard relative to the matter of the application. On May 9th, and on several days thereafter, the plaintiffs and the borough appeared before the appraisers and were fully heard by them with witnesses and counsel as to the amount of damages to be awarded to the plaintiffs for the taking of their property. On May 17th, 1881, the appraisers made a report in writing of their doings in the matter, embracing their assessment of $3,000 damages to the plaintiffs, to the clerk of the Superior Court for Fairfield County, which on that day was by him duly received and recorded in the records of the court.

The assessment of damages has never been paid by the borough to the plaintiffs, though demanded, nor has the amount been deposited with the clerk or with the treasurer of Fairfield County, for the use of the plaintiffs.

The plaintiffs are the joint owners of other premises than those described in the complaint, and situated on the same stream below the premises described, and before the appraisal had erected thereon a dam, and below the dam a raceway for the purpose of conducting the water to machinery belonging to them, both of which were remaining and used by the plaintiffs at the time of the appraisal, and were a portion of the premises included in the application of the borough of Danbury to Judge Carpenter, and the damage and injury to which were also included in the report of the appraisers.

A legal meeting of the borough was held June 29th, 1881, which was warned "to consider the propriety of instructing the warden and burgesses and water commissioners to procure an additional supply of water from what is known as the Pandanaram stream, and to pass or rescind any votes for this purpose." At this meeting the following vote was passed:—" *Voted*, To rescind the vote passed July 16th, 1880, authorizing the warden and burgesses and water commissioners to procure an additional supply of water for the use of the borough from the stream running near the residence of Col. Samuel Gregory."

The plaintiffs had knowledge of this meeting and of the vote.

Subsequent thereto the plaintiffs executed and delivered to other parties two deeds of portions of the estate, which were duly recorded.

The defendant never occupied or used any of the premises of the plaintiffs, nor took any physical possession thereof, nor made .any entry thereon, or in any way appropriated the same or the stream for the use of the borough, otherwise than by said vote of July 16th, 1880, and the application to Judge Carpenter for the appointment of appraisers, and the subsequent proceedings thereon as hereinbefore set forth, and by the purchase from Gregory and his wife.

Upon these facts the case was reserved for the advice of this court.

*L. D. Brewster* and *B. A. Hough,* for the plaintiffs.

1. Proceedings for the condemnation of private property for public uses may be abandoned at any time *before consummation,* without rendering the municipality liable to pay the damages assessed. *After* consummation, on the contrary, the municipality has lost the right of withdrawal, and the right to the amount assessed is fixed and absolute. Mills (on Eminent Domain, sec. 312,) says:—" After a report of damages has been acted on and confirmed the party commencing proceedings for his own benefit cannot, because dissatisfied with the sum awarded, abandon the proceedings and become nonsuit, although he may at any time *before the report is confirmed.*" In the note to this section, " *acceptance* is held equivalent to *confirmation,*" and in sec. 314 it is said—" If a corporation delay until the judgment is entered, they lose the election to abandon." And see numerous cases cited by the author. By the 4th section of the " Water Act of the Borough of Danbury " the record of the report of the appraisers by the clerk of the Superior Court is expressly made a " final adjustment." No further or different acceptance, confirmation or judgment is au-

thorized. The report once recorded and unappealed from is a judgment final and absolute and binding on all the parties. On this point, in addition to the authorities cited by Mills, we cite :—*Neal* v. *Pittsb. & Connellsville R. R. Co.,* 31 Penn. St., 19 ; *City of Phila.* v. *Dyer,* 41 id., 463 ; *Beale* v. *Penn. R. R. Co.,* 86 id., 509 ; *People* v. *Syracuse Common Council,* 78 N. York, 56 ; *Harrington* v. *County Commissioners,* 22 Pick., 263 ; *Drury* v. *City of Boston,* 101 Mass., 439.

2. What is a taking ? The cases on the subject of eminent domain which define what a *taking* is which concludes the parties are generally found under the headings of railroads and streets. The cases of the first class are quoted in Pierce on Railways, pages 171, 172, 209, 210. From page 172 we quote :—" In some jurisdictions the company may abandon at any time before payment; in others, only prior to the final fixing of the location ; and in England, as soon as notice to treat is given." From page 210 :—" In different jurisdictions the act of taking is fixed at different stages in the proceedings for condemnation, as at the time of the filing of the location in some public repository as required by statute, the time of making the assessment or award, the filing or approval of the award, the commencement of proceedings to condemn," &c. Cases of the second class are cited in 2 Dillon on Municipal Corporations, § 608, and it is there said that " proceedings may be abandoned at any time before taking possession or before the final confirmation," and in a note *In re Washington Park Comrs.,* 56 N. York, 144, and *Hawkins* v. *Trustees of Rochester,* 1 Wend., 54 and 318, are cited to the effect that " corporations may discontinue proceedings at any time before the report of the commissioners is finally confirmed and there is a final award in the nature of a judgment in favor of the property owners for their compensation." See also *Webb* v. *Rocky Hill,* 21 Conn., 468, 474 ; *Boston & Prov. R. R. Co.* v. *Midland R. R. Co.,* 1 Gray, 340, 360. We submit that cases concerning the appropriation of water should be more strictly construed against the municipality than either of the two foregoing classes, if any distinction can be made.

It is more difficult to ascertain when the manual or physical taking occurs in the case of water rights, and in the laying out of streets the assessments are hardly *in invitos;* they are to those directly interested in the local improvement.

3. Adverse cases examined. The Maryland cases which hold that the municipality can discontinue *after* the award is confirmed, started with the leading case of *Graff* v. *Mayor &c. of Baltimore*, 10 Maryl., 544. But the charter there only gave the city " the use, estate and interest in the water on payment of the valuation." The doctrine which has ruled the subsequent decisions of that state was established on the language of that charter. Connected with this is the doctrine held in Maryland and very recently enunciated in the case of *Mayor &c. of Baltimore* v. *Hook*, 62 Maryl., 371, that no title or right to enter is acquired until compensation has been paid or tendered, or right to payment until entry is made. The similar cases in Iowa and Ohio are predicated on the peculiar language of their state constitutions requiring compensation *first*, before the title can vest or the right to enter or right to payment exists. All the other cases that we have been able to find holding abandonment after confirmation to be allowable were justified by the express language of the charter. Of the cases first cited in Mills, sec. 311, as allowing discontinuance, the first is *Stacey* v. *Vt. Central R. R. Co.*, 27 Vt., 39. The railroad charter provided that " on depositing the amount, &c., said company should be deemed to be seized and possessed of all such lands as have been appraised;" and the court says (page 48):—" If the land has been taken in such a manner as to vest in the company a right to the use and occupancy of it, compensation is to be made." The next, *Martin* v. *Mayor &c. of Brooklyn*, 1 Hill, 545, was where no report had been filed, and the filing and confirming were regarded as synonymous or of equal legal effect. The case of *Graff* v. *Mayor &c. of Baltimore*, 10 Maryl., 544, as we have already shown, depended on the express language of the charter. In both the Ohio cases next cited, *State* v. *Cin. & Ind. R. R. Co.*, 17 Ohio St., 103,

and *Dayton & Western R. R. Co.* v. *Marshall*, 11 id., 497, proceedings were abandoned before confirmation, and in the last case before the jury was called in. In the very able opinion in the case of *North Misso. R. R. Co.* v. *Lackland*, 25 Misso., 515, the court said—"the enterprise might be abandoned at any time before final judgment," and the prevailing counsel for the appellants, in his learned brief, admits that "had all the acts prescribed been consummated no discontinuance was possible or further discretion left in the matter." But as the statute required that the court should enter judgment and make an order vesting the fee simple title and no such judgment or order had been made, it was held not too late to abandon proceedings. In *Matter of Anthony St.*, 20 Wend., 618, as in *Hawkins* v. *Trustees of Rochester*, 1 Wend., 53, it is held that "until final confirmation proceedings may be discontinued," and that "the rule means a judgment, or confirmation final in its legal character." In *Leisse* v. *St. Louis & Iron Mt. R. R. Co.*, 2 Misso. App., 105, discontinuance was before trial on appeal and Judge GANTT in the opinion approves the English rule—"No discontinuance after locating." On the whole not only do the New York, Pennsylvania, Massachusetts, Vermont, New Hampshire, Maine and Wisconsin cases directly hold the doctrine for which we contend, but the cases from the other states, apparently adverse, place their decisions on grounds which show that at common law, but for the peculiar constitutions or charters of their states, they would have held the same way. The little there is of Connecticut law on this subject is in our favor. See *Moriarty* v. *Mason*, 47 Conn., 436, where not only the filing, but the equivalent of filing, is held conclusive as to a committee's report. See also *Webb* v. *Rocky Hill*, 21 Conn., 468. In *Carson* v. *City of Hartford*, 48 Conn., 68, there was no final action. No "final adjustment" was proved or claimed. The question was whether there had been too long delay for abandonment, and the court virtually decided that time had nothing to do with the question raised, and the cases cited are to that point and to that only.

Stevens v. Borough of Danbury.

4. Peculiar nature of the taking in this case. The "water act" in question authorizes the borough of Danbury to take and use the water of any stream in the town of Danbury, to take and hold any lands or property necessary or convenient for carrying into full effect the purposes of the act, to enter upon and make use of the ground or soil under any private or public grounds, and provides that the borough shall be liable to pay all the damages that shall be sustained by any person by the taking of any land as aforesaid, or by the construction or laying of any reservoirs, pipes, aqueducts, or other work for the purposes of the act, and if damage has occurred or may be likely to occur by reason of taking or using their land, such damages may be assessed, &c. Here the language plainly discriminates between a *taking* and the use and occupancy, and provides for damages in either case. By the vote of the water commissioners they say "we do enter upon and take the following described lands, &c." The application of the borough to the court for the appointment of commissioners alleges that they have entered upon and taken the plaintiffs' lands, property and privilege, and that damage has occurred or may be likely to. The notice to the plaintiffs sets out the taking or using as already described in the application, and the report of the appraisal returned to and recorded by the clerk of the court, sets out that the appraisal is for the *taking* described in the application. In none of the cases heretofore cited is the language of the charter or statute more clear or explicit in defining the taking, or so absolutely exclusive of any further confirmation or judgment being required after the report is filed.

5. In answer to the defendant's claim that the *taking* contemplated must mean an actual, tangible possession of some of the plaintiffs' property or privileges, some injury to his water rights by an actual diminution of the water coming to his factories, in addition to the great injustice in any case of allowing the municipality to experiment with private rights in that manner, we suggest in reply some practical difficulties in the way of such a construction in the present

case. In the first place the finding shows that the taking of the borough was not confined to an application and trial, or a mere experiment on the cost. It actually purchased lands, the initial step in procuring " an additional supply of water," and on the tract so purchased " entered and took possession with the intention at some future time of diverting the water rights of the defendants." The plaintiffs' reservoir was above, while their factory and the raceway were below the borough land on the stream. Now in what way could the plaintiffs know with certainty when the defendant first affected their water rights in the use of the stream ? It is obvious that at certain seasons of the year they might.divert the half of any ordinary stream for many days and not perceptibly affect the owners below, the remaining half being still more than the ordinary flow. If the test of the taking in such a case must be a perceptible, tangible injury to the plaintiffs' easement and no right to obtain payment existed in the plaintiffs until such injury was shown, the uncertainty of time at which rights ripened and became vested would render it a most impracticable and untenable test. For two curious cases involving like questions see *Bailey* v. *Woburn*, 126 Mass., 416, and *Dwight Printing Co.* v. *Boston*, 122 Mass., 583.

6. If the defendant is not liable to us for the damages assessed, we are entitled to the expenses incurred by the defendant's application and withdrawal. *North Misso. R. R. Co.* v. *Lackland*, 25 Misso., 515 ; *Leisee* v. *St. Louis & Iron Mt. R. R. Co.*, 2 Misso. App., 105 ; *State* v. *Hugg*, 44 Maryl., 116. Costs will include all costs of case and counsel fees. Mills on Eminent Domain, § 311 ; *Black* v. *Mayor &c. of Baltimore*, 50 Maryl., 235.

*W. Burke* and *G. Stoddard*, with whom was *D. B. Booth*, for the defendant.

We contend that, under the act in question, the taking of the land was not complete, and the title to it did not pass, until the money was either paid or deposited in accordance with the act ; and until that event the borough had the

right to abandon the project. The rule on this subject varies in different jurisdictions. In England, it is conceded that when a corporation has elected to take land and has given notice to the owner to treat or submit to arbitration, such owner can compel payment of the award. *The King* v. *Commissioners, &c.*, 4 B. & Adol., 335, note; *The King* v. *Hungerford Market Co.*, id., 327; *Stone* v. *Commercial Railway Co.*, 4 Mylne & Craig, 122; *Tawney* v. *Lynn & Ely Railway Co.*, 16 L. Jour. (N. S.) Eq., 282; *Walker* v. *Eastern Counties Railway Co.*, 6 Hare, 594; Hodge's Law of Railways, 170, 174; *Gear* v. *Dubuque & Sioux City R. R. Co.*, 20 Iowa, 523–8; *No. Misso. R. R. Co.* v. *Lackland*, 25 Mo., 515, 528; *Stacey* v. *Vt. Cent. R. R. Co.*, 27 Verm., 39, 47. In some jurisdictions the final fixing of the location is conclusive. *Shaw* v. *City of Charlestown*, 3 Allen, 538; *Pinkerton* v. *Boston & Albany R. R. Co.*, 109 Mass., 527; *Old Colony R. R. Co.* v. *Miller*, 125 id., 1; *Clough* v. *Town of Unity*, 18 N. Hamp., 75; *Smart* v. *Portsmouth & Concord R. R. Co.*, 20 id., 233; *Morris & Essex R. R. Co.* v. *Blair*, 1 Stock., 635. In others, the final determination of the damages is controlling. *Neal* v. *Pittsburgh & Connellsville R. R. Co.*, 31 Penn. St., 19; *City of Philadelphia* v. *Dyer*, 41 id., 463; *Beale* v. *Pennsylvania R. R. Co.*, 86 id., 509; *Hudson River R. R. Co.* v. *Outwater*, 3 Sandf., 689; *In re Military Parade Ground*, 60 N. York, 319; *In re Rhinebeck & Conn. R. R. Co.*, 67 id., 242; *People* v. *Syracuse Common Council*, 78 id., 56; *Dayton & Western R. R. Co.* v. *Marshall*, 11 Ohio St., 497. The only other rule of which we are aware, that is, the one which we say is controlling in this case, is that the corporation can withdraw and abandon its proceedings at any time before payment of the damages. *Stacey* v. *Vermont Cent. R. R. Co.*, 27 Verm., 39; *Baltimore & Susquehanna R. R. Co.* v. *Nesbit*, 10 How., 395; *Garrison* v. *City of N. York*, 21 Wall., 204; *Graff* v. *Mayor &c. of Baltimore*, 10 Md., 544; *State* v. *Graves*, 19 id., 351; *Mayor &c. of Baltimore* v. *Musgrave*, 48 id., 272; *St. Louis & S. Eastern R. R. Co.* v. *Teters*, 68 Ill., 144; *City of Chicago* v. *Barbian*, 80 id., 482; *State* v. *Cin. & Ind.*

*R. R. Co.*, 17 Ohio St., 103; *Gear* v. *Dubuque & Sioux City R. R. Co.*, 20 Iowa, 523; *No. Misso. R. R. Co.* v. *Lackland*, 25 Mo., 515; *State* v. *Hugg*, 44 id., 116; *Leisse* v. *St. Louis & Iron Mt. R. R. Co.*, 2 Mo. App., 105; *Rogers* v. *St. Charles*, 3 id., 45; *In re Washington Park Comrs.*, 56 N. York, 144; *Hooker* v. *N. Haven & Northampton Co.*, 14 Conn., 155; *Hawley* v. *Harrall*, 19 id., 151; *Carson* v. *City of Hartford*, 48 id., 68; 2 Dillon Munic. Corp., §§ 474, 475; Field on Corp., § 448 and notes. Unless there is some special statutory enactment to that effect, (as there is not in this case,) the payment of the value of the land cannot be compelled, until the title vests in the corporation. *Burroughs* v. *Housatonic R. R. Co.*, 15 Conn., 132. The change of the title is the correlative of the right to receive pay. *Stacey* v. *Vermont Cent. R. R. Co.*, 27 Verm., 39; *Thompson* v. *Grand Gulf R. R. Co.*, 3 How. (Miss.,) 240; *Bonaparte* v. *Cam. & Amboy R. R. Co.*, 1 Baldwin C. C. R., 205; *Stewart* v. *Raymond R. R. Co.*, 7 Sm. & Marsh., 568; Field on Corp., § 448, note 1. This act does not state when, that is, at what stage of the proceedings the title shall vest in the borough, but by our decisions that title cannot vest until the deposit or payment of the damages. *Hawley* v. *Harrall*, 19 Conn., 151; Field on Corp., § 448, and note 1. The language of the act, (sec. 4,) " and the payment or deposit of (the damages) with the county treasurer, to the use of such owner or owners, shall release said borough from liability to any further claim for compensation or damages," clearly indicates that such payment or deposit is optional with the defendant, and for its benefit; certain it is that no claim can be made that the title passed to the defendant before such action. *Baltimore & Susquehanna R. R. Co.* v. *Nesbit*, 10 How., 399; *Norris* v. *Mayor &c. of Baltimore*, 44 Md., 598. There being no *physical occupation* of the land or dispossession of the owners, ard no payment of damages, there has been no " taking " by the defendant. Sedgwick on Statutory Law, 2d ed., p. 454, note (a), and authorities cited.

GRANGER, J.   By a resolution of the General Assembly passed in 1860 and added to in 1862, the borough of Danbury was empowered to supply itself with water by purchasing, or by taking for the purpose, any stream of water, water privileges or lands necessary or convenient for the purpose, within or without the limits of the borough; with a provision for the assessment of the value of any property taken otherwise than by purchase and for payment to the owner of the property so taken.

Under this resolution the borough, at a legal meeting held on the 16th day of July, 1880, voted to procure a supply of water for the use of the borough " from a stream running near the residence of Samuel Gregory."   On the 26th of September of that year the borough purchased of Gregory certain lands through which the stream ran, and which were below certain lands and a water privilege on the same stream belonging to the plaintiffs.   The lands were purchased of Gregory with the intention of constructing a dam thereon across the stream, making a pond or reservoir, which would have set the water back upon and have destroyed the mill privilege of the plaintiffs.

Under the resolution before mentioned the water commissioners of the borough, not being able to agree with the plaintiffs as to the compensation to be made them for the taking of their mill privilege and lands, applied to a judge of the Superior Court for the appointment of appraisers to assess the damage.   Appraisers were appointed and a hearing was had before them, both parties being present, and they made their report, assessing the damages at $3,000. This report was duly recorded in the records of the Superior Court for Fairfield County, and the proceedings were in all respects according to the provisions of the resolution in such a case.

On the 29th of June, 1881, the borough, at a legal meeting, voted to rescind the vote of July 16th, 1880, and nothing further was done with regard to the taking of the plaintiffs' land and privilege, and the $3,000 assessed as damages for the taking was not paid.   Notice of this action

of the borough was given to the plaintiffs and they afterwards sold to other parties and conveyed by warranty two parcels of the land which the borough had proposed to take. The plaintiffs now sue the borough to recover the $3,000 assessed in their favor.

It is found that the defendants never took actual possession of the lands in question or of the mill privilege, or in any manner occupied them or interfered with their occupancy by the plaintiffs. Had they in theory taken possession or by what they did become the owners of the property, so that they were bound to pay the assessed value to the plaintiffs?

The resolution of the General Assembly empowers the water commissioners of the borough to "purchase, and take conveyances in the name of the borough, of all lands, property or privileges necessary or convenient for the purposes of the act; to hold in sufficient quantity the water of any stream, either within or without said borough, by the construction of dams across the same; to enter upon any lands near such proposed dams and procure earth, stones or other materials for the construction and maintenance thereof, and to make suitable waste-ways for the surplus water of such stream; to change the location of any road or pass-way which may be covered by the waters of any reservoir so formed, and take land therefor; and to enter upon and make use of the ground or soil of any railroad, street, highway or private way, or public or private grounds, and lay, construct and maintain all necessary pipes and aqueducts."

Another section of the resolution provides as follows:— "Said borough shall be liable to pay all the damages that shall be sustained by any person, persons or corporation by the taking of any land or estate as aforesaid, or by the construction or laying of any reservoirs, pipes, aqueducts, or other works for the purposes of this act. And if at any time it shall appear that any damage has occurred or may be likely to occur to any person, persons or corporation by reason of taking or using their land or estate for the pur-

poses of this act or in the construction of said water-works, and the said board of commissioners cannot agree with the owners of such property as to the amount of compensation or damages to be paid to them, then such compensation or damages may be assessed by three disinterested persons under oath, to be appointed by a judge of the Superior Court on application of either party; notice to be given of such application as directed by such judge. * * * Which said appraisers shall report their doings, embracing the amount of their assessment, to the clerk of the Superior Court for Fairfield County, to be by him recorded; and thereupon such assessment shall be taken and held to be a final adjustment of said compensation and damages between said parties, and payment thereof or deposit of the same with the county treasurer to the use of such owner or owners shall release said borough from liability to any further claim for compensation or damages."

There is here, it will be seen, no provision that the amount assessed shall constitute a debt which may be recovered of the borough by the owner of the property proposed to be taken; the amount is fixed by the proceedings as the sum to be paid if the land is taken, and its payment is clearly a condition precedent of the right to take it. The mere incipient or theoretical taking is really only a *proposed* taking. This is manifest from the use of the word "take" in the resolution in relation to lands taken for the laying of pipes, where the proposed taking, upon which the proceedings for the assessment are had, is a very different thing from the actual entry upon and digging up of the land for the laying of the pipes.

We conclude therefore that the borough, after the assessment, had still the right to abandon the idea of taking the land, and the whole project if it deemed best, and that the only security that the owner of the property had, was in the necessity of the borough making payment before the land was actually taken.

There may be a hardship in compelling a land or mill-site owner to hold his property in entire uncertainty, after an

assessment, whether it will be taken or not; but the inconvenience is of the same kind which attends all proceedings for the taking of land for public improvements, and which is incident to the ownership of property in a community and especially in a city. This inconvenience was shown in a marked degree in the recent case of *Carson* v. *City of Hartford*, 48 Conn., 68, where it was held by the court to give no right of action against the defendant city. There is generally a provision in such resolutions that the payment shall be made, if at all, within a limited time; and there ought properly to be such a provision in every case. But its absence here cannot affect the question now before us.

The plaintiffs claimed also to recover for counsel fees and other expenses incurred in the hearing before the appraisers. These very clearly they had no right to recover in any circumstances. The borough was acting within the law in applying for an assessment of the damages, and the law under which the proceedings were had made no provision for costs on either side, while the abandonment of the taking of the property by the borough could not create an obligation to pay these costs where no legal obligation existed before. There was no negligence on the part of the borough; no misrepresentation; no action that was not in every respect according to law. There was nothing upon which to found a claim for damages for a consequential injury in any form.

The Superior Court is advised to render judgment for the defendants on both counts of the complaint.

In this opinion the other judges concurred.