THE CITY OF BRISTOL *vs.* THE BRISTOL WATER COMPANY.

*First Judicial District, Hartford, May Term, 1912.*

HALL, C. J., PRENTICE, THAYER, RORABACK AND WHEELER, JS.

The appointment of a committee to appraise property to be taken for a public use is a judgment from which an appeal lies to this court.

Judicial action may not be called for upon a subject not within the judicial function; but the fact that either party may refuse to

accept the report of appraisers in a condemnation proceeding does not make their appointment a nonjudicial act, especially when the right of each will be affected by whatever action they take.

Ordinarily the applicant in a condemnation proceeding may, in the absence of statutory prohibition, withdraw at any time prior to final judgment, provided the defendant would not be injured thereby.

The General Assembly may compel an applicant to pursue his condemnation proceeding to an end or may regulate his right of withdrawal; in the absence of statutory regulation he may withdraw.

The right of withdrawal in any event ceases when title has vested or possession been taken.

The risk of loss to the individual, involved in the right of the public to withdraw from a condemnation proceeding, is a community obligation resting upon each member owning real estate.

A community ought to be given the opportunity to ascertain the probable cost, before purchasing a public utility, and to withdraw if it finds the expense too great.

A single appraisal, made in a direct condemnation proceeding, with an opportunity for withdrawal by the applicant within a reasonable time after the appraisal, accomplishes a sufficient protection of the public interest.

The procedure of two appraisals is unnecessarily expensive, cumbersome and wasteful of the judge's time, but is not unusual; it is analogous to that under the highway and flowage statutes, which have never been attacked as unconstitutional because involving court or jury in a nonjudicial act.

The privilege of withdrawal applies to every action, when the rights of the defendant are not jeopardized, and the several acts done in the course of the action are not thereby rendered nonjudicial, since they are done in the settlement of rights which are proper subjects of judicial action, even though rendered nugatory by the subsequent withdrawal.

A Special Act empowered the city of Bristol to take over the plant of the local water company, according to the following procedure: The mayor to bring his petition to a judge of the Superior Court and the judge to appoint three appraisers; after the filing of the appraisal the question of purchase to be laid before the voters; in the event of a negative vote, the city's rights under the Act to be suspended for one year; in the event of an affirmative vote but a refusal by the company to sell, the mayor to bring his petition for another appraisal, and the city to acquire title by condemnation. *Held:*—

1. That if either party refused to accept the first appraisal, its right would be adversely affected by such action, for after its refusal the city could take no further steps for one year, and the company

would not be subjected to condemnation within that period; and the company, after its refusal to accept the appraisal, could not prevent subsequent condemnation proceedings from which neither it nor the city could withdraw; the status of both would be changed, both would be bound to a recognized judicial procedure, and the judge's act would not be rendered nugatory.

2. That this proceeding involved a subject within the judicial function and did not concern a purely administrative act.

3. That the first appraisal was a part of the condemnation proceeding and incident to the exercise of judicial power.

The case of *Bradley* v. *New Haven*, 73 Conn. 646, distinguished.

Argued May 17th—decided July 26th, 1912.

APPLICATION by the city of Bristol, under a Special Act (16 Special Laws, p. 339, § 3), for the appointment of a committee to appraise the value of the plant, property, and franchises of the Bristol Water Company, which said city desired to purchase for the purpose of supplying its inhabitants with pure water, brought to the *Hon. William S. Case*, a judge of the Superior Court; after a full hearing on defendant's plea to the jurisdiction said judge dismissed the application, and the plaintiff appealed. *Error and cause remanded.*

The application alleges: The legal voters of the city of Bristol, on January 17th, 1912, duly accepted the provisions of § 3 of No. 352 of the Special Acts of 1911, and authorized the construction, maintenance, and operation of a municipal water plant. And the said city desires to procure a plant, owned by said city, for the purpose of supplying its inhabitants with pure water, and to that end desires to purchase the plant, privileges, and franchises of the Bristol Water Company.

That part of said § 3 which is applicable is as follows: "Sec. 3. (*a*) The city of Bristol is hereby authorized to construct, establish, and maintain a plant or plants for the purpose of supplying the inhabitants of said city with pure water. . . . (*c*) Said city of Bristol shall not exercise any of the powers herein conferred until a vote·

of said city accepting the provisions of this section and authorizing the construction, maintenance, and operation of a plant to supply the inhabitants of said city with water shall have been passed by a majority vote of the legal voters of said city voting at a city meeting duly warned and held for that purpose. Should such a vote fail of passage at any such city meeting, no vote on said subject shall again be taken until after the expiration of one year from the date of said meeting.

"(d) In the exercise of the powers conferred by this section, said city of Bristol is hereby authorized to purchase the plant, privileges, and franchises, and all rights and titles connected therewith, of The Bristol Water Company, and upon the passage of the vote provided for in paragraph (c) of this section said city shall not proceed to install, maintain, and operate a water plant of its own until the following proceedings have been had: The mayor of said city shall bring his petition to a judge of the Superior Court, setting forth that the city, under the provisions of this section, desires to procure, establish, maintain, and operate a plant, owned by said city, for the purpose of supplying the inhabitants thereof with pure water, and to that end desires to purchase the plant, property, rights, and franchises of The Bristol Water Company, and praying such judge to appoint a committee of three disinterested and judicious persons to appraise the value of said plant, property, and franchises of said The Bristol Water Company, which petition shall be served by any proper officer upon The Bristol Water Company by leaving with or at the usual place of abode of the secretary thereof a true and attested copy of such petition at least twelve days before the date on which said petition is made returnable to such judge. Upon the return of said petition, or as soon thereafter as may be, such judge shall, upon due hearing had, appoint said

committee, and said committee shall thereupon proceed, after reasonable notice to and hearing of the parties, to make its appraisal of the value of said plant, property, and franchise, and shall file the same, in writing, with the clerk of the Superior Court for Hartford county. At a meeting of the legal voters of said city of Bristol, to be held within sixty days after the date of the filing of said appraisal with said clerk of the Superior Court, the mayor of said city shall cause to be presented to the voters, at such meeting, a certified copy of such appraisal, together with a resolution in proper form authorizing the purchase of said plant, property, and franchises of The Bristol Water Company by the city at the appraisal price.

"If a majority of the ballots cast at such meeting shall be in favor of the passage of said resolution the city clerk shall, without delay, file a true and attested copy of said resolution with the secretary of said The Bristol Water Company, and if said company shall neglect or refuse, for a period of sixty days after said certified copy has been filed with its secretary as aforesaid, to notify said city that it will sell and deliver to said city, within one year from the date of said notice, its plant, property, and franchises at the price fixed by said appraisal, said city shall proceed, in the exercise of the powers conferred upon it by this section, to condemn and take, for the purpose of supplying the inhabitants of said city with water, said property, plant, and franchises of said The Bristol Water Company in the manner following:

"The mayor of said city shall prefer his petition to any judge of the Superior Court praying for the appointment by such judge of a committee to appraise the value of the property, plant, and franchises of said company, and such judge shall cause such notice of such application to be given to said The Bristol Water Company as he shall deem proper, and upon proof of such

notice and upon hearing, shall appoint three disinterested persons to examine said property, plant, and franchises; and such persons, being duly sworn to a faithful discharge of their duty, and after reasonable notice to and hearing of the parties, shall ascertain the value of said plant, property, and franchises and the amount of compensation which the owners thereof shall receive therefor, and report the same, in writing, to the clerk of the Superior Court for Hartford county, to be by him recorded; and thereupon such judge may confirm the doings of said appraisers and direct said city to pay said sums so appraised to said The Bristol Water Company, in such manner as such judge shall prescribe, in full compensation for said plant, property, and franchises, and upon the compliance with the order of such judge, said city shall take, occupy, have, own, and hold said plant, property, and franchises without any liability to any further claim for compensation or damages on the part of the said The Bristol Water Company, and the right of The Bristol Water Company to exercise such franchises shall cease.

"Should said city, at its said meeting, refuse, by a majority of the votes cast at said meeting, to purchase said plant, property, and franchises of The Bristol Water Company, either before or after the first appraisal herein provided for, then it shall not, for a period of one year from the date of said last-named meeting, exercise any of the powers conferred by this section. At the expiration of said period said mayor may prefer his petition to a judge of the Superior Court for the appointment of another committee and for a new appraisal, and thereupon shall proceed in the manner hereinbefore prescribed for the purchase of said plant, property, and franchises of The Bristol Water Company, and may thereafter proceed to condemn and take the same in the manner hereinbefore provided."

To this application the defendant filed a plea to the jurisdiction, and moved to dismiss on the ground that the hearing of said petition, and the duty and power of appointing a committee under said Act by a judge of the Superior Court, imposed upon him a nonjudicial function, and hence the Act was unconstitutional. The said plea was sustained, and the petition dismissed for lack of jurisdiction.

*William F. Henney*, for the appellant (plaintiff).

*Noble E. Pierce*, for the appellee (defendant).

WHEELER, J.  The plea to the jurisdiction was sustained upon the ground that the first appraisal provided for in this Act (Special Acts of 1911, p. 338, No. 352) had no necessarily binding effect upon either party, settled no rights, and redressed no wrongs; and hence the judge was called upon to exercise a function clearly nonjudicial.

An analysis of the Act will disclose the insecurity of this position. The Act provides for: (1) A petition by the mayor to a judge of the Superior Court, in the form of petition adopted in this action.  (2) The appointment of a committee to appraise, as prayed for.  (3) The making and filing of said appraisal with the clerk of the Superior Court.  (4) If the parties accept the appraisal, payment of the appraised value follows, and the title vests in the city.  (5) If the city refuses to accept the appraisal, its right under its charter to acquire the Water Company plant is suspended for one year.  (6) If the Water Company refuses or neglects to accept the appraisal agreed to, the city must proceed to condemn the plant in the manner prescribed in the charter.

The petition prays for the appointment of a committee to appraise the property to be taken for a public use.

The appointment of the committee is a judgment from which an appeal lies to this court. *New York, N. H. & H. R. Co.* v. *Long,* 69 Conn. 424, 37 Atl. 1070; *New Milford Water Co.* v. *Watson,* 75 Conn. 237, 53 Atl. 57; *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 57 Atl. 746.

The controversy is not that the appointment of such a committee would not ordinarily be a judicial act, but that, since its report, when filed, may be disregarded by either party, the judge's act in the premises is wholly nugatory. While either party may refuse to accept the appraisal, the rights of each will be affected by their act. The first appraisal may end the action: in case the parties agree on the appraisal, payment is made and title passes. In case the city refuses to purchase at the appraisal, it can take no further step toward acquiring this plant for one year. Its action materially curtails its own right of condemnation and enlarges those of the company by forbidding condemnation of its plant for the stated period.

After the city files with the company its resolution authorizing the purchase of the plant at the appraisal, if the company refuses or neglects to accept the same within a specified period, the city shall proceed to acquire by condemnation in the manner pointed out by the Act. Thereafter the city can no longer withdraw; nor can the company prevent the condemnation of its plant to the municipal use. The rights of each are thus affected by the act of the company. The city is greatly prejudiced when it loses the right to withdraw from its condemnation proceeding.

Thereafter, if the second appraisal be excessive, or, through changed conditons, it would be desirable for the city to abandon the undertaking, it cannot withdraw. Ordinarily in every condemnation the applicant may, in the absence of statutory prohibition, withdraw at

any time prior to final judgment, when the rights of the defendant would not be injuriously affected by such withdrawal.

The status of the parties is changed by their action in relation to the first appraisal. And this is one step in an orderly proceeding to acquire the plant of the Water Company by condemnation.

There is nothing administrative about this proceeding. The action of the parties taken under the first appraisal settles the rights of the parties and binds them in one of the recognized actions of judicial procedure.

*Bradley* v. *New Haven*, 73 Conn. 646, 48 Atl. 960, on which the defendant relies, concerned a purely administrative act, which bound no one and settled no rights, and was a plain endeavor to secure judicial action upon a subject not within the judicial function. In this case the subject-matter is within the judicial function.

The obvious purpose of the first appraisal is to inform the voters of the municipality of the probable expense of taking over the Water Company by an estimate made in the course of an impartial judicial determination. The excessive cost of a projected public improvement may decide the municipal necessity. The probable cost of purchase of a public utility should be ascertained by a community before it finally decides to buy. This would be the course of ordinary prudence and common sense in the affairs of an individual; it is similarly the rational course to pursue in public affairs. The community ought to have the right to withdraw from its proposed purchase, if it finds the cost is out of proportion to the public benefit, or to its own resources. The procedure of this first appraisal accomplishes this reasonable protection of the public interest.

The procedure for the second appraisal of the condemnation is for the benefit of the Water Company, giv-

ing to it another trial of the question of value. The method adopted is cumbersome and expensive and unnecessarily wasteful of the time of the judge. A single appraisal by appointees of the judge, duly confirmed by him, would furnish all the day in court that either party should have upon the question of value. The purpose of the city could have been served by a single appraisal, made in a direct condemnation proceeding, with an opportunity for withdrawal by the applicant within a reasonable time after the filing of the appraisal. The opportunity for withdrawal by the city under this statute is in keeping with the ordinary course followed in condemnation proceedings.

The General Assembly may compel an applicant to pursue his proceeding for condemnation to an end, or it may regulate his right of withdrawal. In the absence of statutory regulation, the applicant may withdraw his action. Some authorities hold that the withdrawal must be had before confirmation of the report; others that withdrawal may come after confirmation and before payment, provided title has not passed or possession been taken. *Stevens* v. *Danbury,* 53 Conn. 9, 22 Atl. 1071; *Carson* v. *Hartford,* 48 Conn. 68; *In Matter of Water Comrs. of Jersey City,* 31 N. J. L. 72; *O'Neill* v. *Freeholders of Hudson,* 41 N. J. L. 161, 172; note 28 L. R. A. 91, 94; *Corbin* v. *Cedar Rapids, I. F. & N. W. Ry. Co.,* 66 Iowa, 73, 74, 23 N. W. 270; *People ex rel. Gas-Light Co.* v. *Common Council,* 78 N. Y. 56, 60; Lewis on Eminent Domain, §§ 954, 955. When title has vested or possession been taken, the right of withdrawal ends. Lewis on Eminent Domain, § 955.

The right of the public to withdraw subjects the property of the individual to the will of the public, and may cause him inconvenience and loss. This is a community obligation resting upon each member owning real es-

tate. *Stevens* v. *Danbury,* 53 Conn. 9, 22 Atl. 1071. Were the community compelled to abide by the appraisal, it might embark on a project of vastly greater cost than it contemplated, take land it did not need, and make choice of a location, although subsequent events pointed to a better one.

The right to withdraw his action is not peculiar to the plaintiff in a condemnation proceeding. Every action may be withdrawn prior to verdict or final judgment, whenever it can be done without injuriously affecting rights of the defendant acquired by reason of the action. *Weston* v. *Railroad Comrs.,* 205 Mass. 94, 97, 91 N. E. 303.

That every plaintiff may withdraw his action does not make the several acts done in the course of the action nonjudicial. The acts done are in settlement of rights which are proper subjects of judicial action, though rendered nugatory by the subsequent withdrawal.

The withdrawal of the ordinary condemnation or other action affects no rights; but the withdrawal of the application in this case does affect the right of the city to begin a similar proceeding for one year.

We think the first appraisal was a part of the condemnation proceeding, and an incident to the exercise of judicial power.

Legislation in condemnation proceedings of a character similar to the Act before us is not unusual. The highway statutes (General Statutes, § 2067) and the flowage statutes (General Statutes, § 986) furnish examples of analogous proceedings. They each provide for two appraisals at the will of a party to the proceeding. In each the report of the committee may be disregarded by a party to the action. That these statutes have long stood and often been before our courts, and never been attacked as engaging court or judge in a

Vol. lxxxv—43

nonjudicial act, affords strong basis for the claim that they do not invade constitutional rights.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.