TOWN OF TRUMBULL *v.* FREDERICK F. EHRSAM ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, JS.

Argued October 5, 1960—decided January 5, 1961

*Michael J. Sicilian* and *George A. Saden,* for the appellant (named defendant).

*Frank Logue,* for the appellee (plaintiff).

SHEA, J. This action was brought under authority of what are now General Statutes §§ 48-4 and 48-5 to condemn land of the named defendant, hereinafter called the defendant, for use as a public high school. In the course of the proceedings, the court granted the plaintiff's motion for permission to withdraw the action. From that ruling the defendant has appealed.

The legislative body of the plaintiff, the town of Trumbull, was created in 1953 by Special Act No. 27 and is known as the representative town meeting, hereinafter called R.T.M. 26 Spec. Laws 704. Under § 13 of the act, as amended, the qualified electors of the town are granted the power, by referendum, to reverse, modify or approve any act of the R.T.M., provided a written petition for such a referendum, signed by not less than 5 per cent of the total number of qualified electors in the town, shall be filed with the town clerk before the effective date of the act. 26 Spec. Laws 708, as amended, 27 Spec. Laws 643.

In February, 1957, the R.T.M., having fixed on the defendant's land as a school site, attempted to purchase twenty-one acres from him. The parties were unable to agree on a price; in August, the plaintiff filed its petition to condemn the property, following the procedure outlined in § 48-12 of the General Statutes. Under the provisions of § 48-16, the plaintiff

obtained permission from the court to enter immediately and to devote the property to the use specified in the petition. The plaintiff made test borings on the property and cut down a number of trees. In the spring of 1958, a controversy arose in Trumbull over the acquisition of the defendant's land. On March 21, the R.T.M. voted to acquire other property for the high school and to abandon the proceedings to acquire the defendant's property.

In a referendum held under § 13 of 1953 Special Act No. 27 on April 10, 1958, the action taken by the R.T.M. on March 21, 1958, was overruled. On May 26, 1958, the R.T.M. appropriated more than $3,000,000 to construct and equip a high school on the defendant's property. On June 6, 1958, the R.T.M. published a warning of a meeting to be held to consider abandonment of the proceedings to acquire the defendant's land. On June 11, 1958, the committee appointed by the Superior Court to assess damages to the defendant filed its report in court. On the following day, the R.T.M. voted to abandon the proceedings. Thereafter, the court granted the plaintiff's motion to withdraw the action. A series of procedural irregularities ensued in the trial court as a result of the motion to withdraw, but the parties and the trial court ignored these defects and we shall adopt the same course. *Anselmo* v. *Cox,* 135 Conn. 78, 79, 60 A.2d 767.

The defendant claims that the entry made by the plaintiff on his land constituted a taking of it which barred the plaintiff from abandoning the proceedings to condemn. So far as the rights of an owner of property are concerned, eminent domain proceedings are, from their inception until the taking is complete, wholly within the control of the state which authorizes them. The question as to when a taking

is complete is one of substantive law and depends upon the law of each state. *Crawford* v. *Bridgeport,* 92 Conn. 431, 437, 103 A. 125; 6 Nichols, Eminent Domain (3d Ed.) § 26.42.

The procedure for condemning land for school purposes is outlined in § 48-12. The law provides that a petition may be preferred to the Superior Court of the county in which the property lies and that the court shall appoint a committee of three disinterested persons to ascertain the value of the property and assess just damages to the owner. The committee is then required to report its doings to the court. If the report of the committee is accepted, the acceptance has the effect of a judgment in favor of the owner of the property against the petitioner for the amount of the assessment made by the committee, and an execution may issue. Section 48-12 specifies that, except as provided under § 48-16, the property shall not be used or enclosed by the petitioner until the petitioner pays the amount of the judgment to the party to whom it is due or deposits it for his use. Section 48-12 further specifies that upon such payment or deposit the property shall become the property of the petitioner. The legislature has clearly fixed the time when the respective rights of the parties are changed by the transfer of title to the land. After that time the proceedings cannot be discontinued. *Bristol* v. *Bristol Water Co.,* 85 Conn. 663, 670, 84 A. 314; *Stevens* v. *Danbury,* 53 Conn. 9, 22, 23, 22 A. 1071; *Carson* v. *Hartford,* 48 Conn. 68, 88; note, 121 A.L.R. 12, 31.

Under § 48-12, the petitioner is not entitled to possession of the land before the amount of the judgment has been paid or deposited with the county treasurer unless the petitioner has been given permission under § 48-16 to enter into possession pend-

ing the condemnation proceedings.[1]  Section 48-16 provides that the court may, when satisfied that the public interest will be prejudiced by delay, direct that the petitioner be permitted to enter immediately upon the property to be taken and devote it temporarily to the public use specified in the petition, upon deposit with the court of a sum fixed by it. Section 48-16 also provides that if the petition is dismissed, or no award is made, or the proceedings are abandoned, the court shall direct that the money deposited shall be applied, so far as necessary, "to the payment of any damages which the [owner] may have sustained" by reason of the entry upon, and use of, his property.  Finally, the statute provides for the method to be followed in the ascertainment of such damages and for the restoration of possession of the property to the owner.

The possession contemplated under § 48-16 is temporary in character and covers only the period during which the condemnation proceedings are pending.  It lacks any of the elements of permanency, and the possibility of dismissal or abandonment of the proceedings is clearly foreseen.  The recognition by the legislature that these eventualities may occur clearly demonstrates the temporary character of the possession and that it does not affect the right of the petitioner to abandon the proceedings at any time before the time of transfer of title as fixed under § 48-12.  If, for some reason, it is desired to give up the undertaking, the proceedings may be discontinued before the payment of the judgment.  6 Nichols, loc. cit.

The defendant contends that he was dispossessed by the plaintiff, that his property was entered,

---

[1] By Public Acts 1959, No. 152, § 65, effective October 1, 1960, the deposit is to be made with the state treasurer.

despoiled and used by the plaintiff with every mark of ownership and dominion over it, and that the possession of the plaintiff was in nowise temporary or limited. This claim is unsupported by the finding. Since the defendant failed to file an appendix to his brief, the finding cannot be supplemented. Practice Book § 447. Moreover, the plaintiff's right to enter the property was limited to the authority granted under § 48-16. There can be no doubt that the order made by the court was issued under that statute. The language of the plaintiff's application and of the order issued pursuant to it closely follows the language of the statute. The action of the plaintiff in entering the land under permission of the court in accordance with the provisions of the statute did not constitute a taking or an appropriation of the land so as to bar the plaintiff from discontinuing the proceedings. 6 Nichols, op. cit. § 26.42[1].

There is nothing in the case to create an estoppel against the plaintiff's abandonment of the proceedings. When public improvements are contemplated in a particular community, there may be some inconvenience or hardship imposed upon a landowner because of an uncertainty as to whether his land may be taken to promote the improvement, but this inconvenience attends all such proceedings and is incident to the ownership of property. *Carson* v. *Hartford,* 48 Conn. 68, 88; *Stevens* v. *Danbury,* 53 Conn. 9, 22, 22 A. 1071. The filing of the petition and the temporary entry upon the defendant's property subject to the condition that he might recover for any damage resulting from such entry did not estop the plaintiff from withdrawing the petition.

The next claim advanced by the defendant is that the referendum which was held on April 10, 1958, overruling the action taken by the R.T.M. on

March 21, 1958, was final and conclusive and that the R.T.M. had no authority to re-enact the same resolution on June 12, 1958. Here, the defendant overlooks the facts contained in the stipulation of the parties, upon which the matter was presented to the trial court. There is an important distinction between the vote considered under the referendum and the action taken by the R.T.M. in June. We do not have the resolutions before us, and the record is barren of any indication that they were introduced in evidence for the trial court to compare them. The stipulation shows that the legislation adopted on June 12, 1958, by the R.T.M. differed from that which was submitted to the electorate under the referendum on April 10, 1958. Under the facts agreed upon by the parties, and found by the trial court, the action submitted to the voters in the referendum involved two separate and distinct propositions, (1) the abandonment of the condemnation proceedings against the defendant's property, and (2) the acquisition of property owned by others. By its vote of June 12, the R.T.M. acted on the single proposition of abandoning the proceedings to acquire the defendant's property. The final action by the R.T.M. did not embrace all of the subject matter which was passed upon in the April referendum. It involved only a part of it. Where the legislative body acts in good faith and with no intent to evade the effect of the referendum, it may pass legislation covering the same subject matter if the legislation differs essentially from the measure previously rejected by the voters. *In re Stratham,* 45 Cal. App. 436, 440, 187 P. 986; *Eagle* v. *City of Corbin,* 275 Ky. 808, 816, 122 S.W.2d 798; *State ex rel. Megnella* v. *Meining,* 133 Minn. 98, 100, 157 N.W. 991; 5 McQuillin, Municipal Corporations (3d Ed.) p. 250; see note, 33

A.L.R.2d 1118, 1123. In this case, there is no claim that the R.T.M. acted in bad faith. Under the circumstances, it had authority to take the action which it did on June 12. The plaintiff was not barred from abandoning the proceedings because of the referendum. It is unnecessary to decide whether, had there been no difference between the resolution considered under the referendum and the resolution finally passed by the R.T.M. in June, the R.T.M., as the legislative body of the town, could re-enact legislation which had previously been disapproved by the electorate. In this connection, see the following: *State ex rel. Singer* v. *Cartledge,* 129 Ohio St. 279, 195 N.E. 237; *International Brotherhood* v. *Cincinnati Gas & Electric Co.,* 33 Ohio Op. 99, 100; *Smith* v. *Livingston County,* 195 Ky. 382, 242 S.W. 612; *McKann* v. *Irvington,* 133 N.J.L. 63, 67, 42 A.2d 391; notes, 97 A.L.R. 1046, 1047, 33 A.L.R.2d 1118, 1123.

There is no merit to the claim of the defendant that his property has been taken in violation of provisions of the federal and state constitutions which declare that the property of no person shall be taken for public use without just compensation. U.S. Const. amend. V; Conn. Const. art. I § 11. The word "taken" in this context means the exclusion of the owner from his private use and possession and the actual assumption of exclusive possession for public purposes by the condemnor. *Bishop* v. *New Haven,* 82 Conn. 51, 58, 72 A. 646; *New York, N.H. & H.R. Co.* v. *Long,* 69 Conn. 424, 435, 37 A. 1070; *Woodruff* v. *Catlin,* 54 Conn. 277, 297, 6 A. 849. The taking refers to the legal taking and presupposes payment following the date when the damages become due and payable. See *Kelly* v. *Waterbury,* 83 Conn. 270, 272, 76 A. 467. When possession has been taken from the owner, he is constitutionally entitled

to any damages which he may have suffered, and if our statute failed to provide a remedy he could, nevertheless, sue to recover such damages. 6 Nichols, Eminent Domain § 26.42[1]. Since our statute makes provision for the recovery of damages, an owner has no just cause for complaint. There has been no infringement of the constitutional rights of the defendant. *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 590, 87 A.2d 139.

We now consider the ruling of the trial court in granting the motion to withdraw the action. Section 48-16 provides that when the proceedings are abandoned by the petitioner, the court shall direct that the money deposited with the court by him be applied "to the payment of any damages which the [owner] may have sustained" by reason of the entry upon, and use of, his property. The defendant claims that he suffered damage as a result of the entry on his property. The trial court was correct in holding that the plaintiff had the right to abandon the proceedings. It should not, however, have permitted the plaintiff to withdraw the action, since the defendant's claim for damages must be heard and determined in the manner provided by the statute.

There is error, the judgment is set aside and the case is remanded with direction to deny the motion for permission to withdraw the action and then proceed according to law.

In this opinion the other judges concurred.